IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff-Respondent, | § | |
| | § | |
| V. | § | CRIMINAL ACTION NO. H-95-142-1 |
| | § | CIVIL ACTION NO. H-05-88 |
| ROBERTO RIOJAS, | § | |
| | § | |
| Defendant-Movant. | § | |

**MEMORANDUM AND RECOMMENDATION GRANTING
RESPONDENT'S MOTION TO DISMISS, AND DENYING
MOVANT'S § 2255 MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE**

Before the Magistrate Judge in this federal habeas corpus proceeding pursuant to 28 U.S.C.

§ 2255 is Movant Roberto Riojas'§ 2255 Motion to Vacate, Set Aside or Correct Sentence

(Document No. 5480),[1] Preliminary Memorandum of Points and Authorities (Document No. 5472),

the United States' Answer (Document No. 5521), and Motion for Summary Judgment (Document

No. 5520), and Movant's Response to the United States' Motion for Summary Judgment (Document

No. 5665).   After reviewing the parties' submissions, the record of the proceedings before the

District Court in the underlying criminal case, and the applicable case law, the Magistrate Judge

RECOMMENDS for the reasons set forth below, that the United States' Motion for Summary

Judgment (Document No. 5520) be GRANTED, and  that Movant's § 2255 Motion to Vacate, Set

---

[1] Roberto Riojas' Motion to Vacate, Set Aside or Correct Sentence can be found at Document No. 1 in Civil Action H-05-88, and at Document No. 5459 in Criminal action H-95-142. References hereafter will be to the criminal document numbers unless otherwise indicated.

Aside or Correct Sentence (Document No. 5520) be DENIED, and that this § 2255 proceeding be DISMISSED with prejudice.

## I.     Procedural History

On October 10, 1996, a federal grand jury charged Roberto Riojas ("Riojas") and 78 co-defendants in a 197-count sixth superseding indictment with various violations involving narcotics distribution, money laundering, structuring to evade currency reporting requirements, failure to file tax returns, aiding and abetting the use of a communication facility in the commission of a felony narcotics offense, travel in interstate and foreign commerce in aid of a racketeering enterprise, obstruction of justice, and continuing criminal enterprise (Document No. 19).

On April 17, 1998, Riojas pleaded guilty, pursuant to a written plea agreement to: conspiring to launder money, in violation of 18 U.S.C. § 1956(g), (h) (Count 5), and engaging in a continuing criminal enterprise ("CCE"), in violation of 21 U.S.C. § 848 (Count 90) (Documents No. 2642, 2643). As part of the plea agreement, Riojas waived his right to appeal the sentence, agreed to the forfeiture of assets, and agreed to cooperate with the United States. (Document No. 2643, ¶ 1, 9-11). The Government, in exchange for Riojas' plea, agreed to: dismiss the remaining counts of the superseding indictment, and not to oppose a three point reduction for acceptance of responsibility should such a recommendation be made by the Probation Department. Also, the written plea agreement carried the potential for a sentencing departure under U.S.S.G. § 5K1.1. (Document No. 2643, ¶ 1, Document No. 2713, Transcript of April 17, 1998, Rearraignment Hearing, p.13). In addition, the written Plea Agreement set forth the manner in which Riojas' sentence would be calculated, and the penalties for the offenses, to which he agreed to plead guilty, as follows:

> 2. The penalty for a violation of Title 21 United States Code, § 848 includes a term of imprisonment of a minimum of twenty (20) years to life, a fine of Two (2) Million

Dollars and a period of supervised release of at least three (3) years.  The penalty for a violation of Title 18, United States Code, §§ 1956(g) and (h) is up to twenty (20) years in prison and a fine of up to Five (5) Hundred Thousand Dollars and (3) years of supervised release.  The defendant is not eligible for parole.

*            *

8.  The defendant is aware that his sentence will be imposed in accordance with the *Sentencing Guidelines and Policy Statements*.  The defendant nonetheless acknowledges and agrees that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offenses to which the defendant pleads guilty.  The defendant understands that the sentence to be imposed is discretionary with the sentencing judge and further understands that if the judge imposes a sentence up to the maximum established by statute, the defendant cannot for that reason alone, withdraw his guilty plea and will remain bound by all the obligations of this agreement.

*            *

9.  In agreeing to this waiver, the defendant is aware that a sentence has not yet been determined by the Court.  The defendant is also aware that any estimate of the probable sentencing range under the sentencing guidelines that the defendant may have received from the defendant's counsel, the United States or the Probation Office, is a prediction, not a promise, and is not binding on the United States, the probation officer or the Court.  The United States does not make any promise or representation concerning what sentence the defendant will receive.  Realizing the uncertainty in estimating what sentence the defendant will ultimately receive, the defendant knowingly waives his right to appeal the sentence in exchange for the concessions made by the United States in this plea agreement.

10.  The defendant understands that the guideline range under the Sentence Guideline is determined by the Probation Department Presentence Division and that determination is not part of this agreement.

*            *

15.  Whether the defendant has breached any provision of this plea agreement shall be determined solely by the United States through the United States Attorney's Office.  Likewise, the decision to file or decline to file a motion under Section 5K1.1 of the Sentence Guidelines rests solely with the United States of America, whose judgment in that regard is final.  (Document No. 2643).

As to the agreement by Riojas to forfeit assets, the plea agreement states in pertinent part:

This plea agreement is being entered into by the United States on the basis of the defendant's express representation that the defendant will make a full and complete disclosure of all assets listed in this indictment of which he has knowledge, including any assets over which he at any time exercised control, possessed or in which the defendant has or has had any financial interest. The defendant agrees to forfeit, and hereby does forfeit, whatever interest he may have in any drug related or money laundering related asset which the defendant owns or claims an interest in, and of all assets listed in the indictment. Defendant agrees to waive any interest and stipulate to the factual and legal basis for forfeiture of any asset which is the subject of any administrative or judicial forfeiture proceeding, whether criminal or civil. (Document No. 2643).

At Riojas' April 17, 1998, Rearraignment hearing,[2] the Court engaged in an extended colloquy to ensure that Riojas had reviewed the written Plea Agreement, had discussed it with his attorney, and that he understood the charges against him, the minimum and maximum penalties, the rights he was waiving, the factual basis of the plea, and the manner in which his sentence would be calculated. (Document No. 2642, Transcript of Rearraignment Hearing, Document No. 2713). With respect to Riojas' understanding of the plea agreement, including the minimum and maximum penalties, the elements of the crimes to which he was pleading, and the calculation of his sentence, the following exchanges took place between Riojas and the Court regarding Riojas' understanding of the plea agreement:

Mr. Clark: As to Mr. Roberto Riojas, he will be pleading to two counts. The first count is count 90, which is the C.C.E. count. The second count is count 5, which is the money laundering conspiracy. The remaining counts would be dismissed. In exchange for that, a plea of guilty. In addition, the government would not oppose a three-point reduction should the probation department recommend that. There is potential language of a 5K1, but that is in the future. And, also there is an agreement to forfeiture.

*        *

The Court: Okay. Let me ask you, Roberto Riojas, if that sounds like a summary of the written plea agreement that you're proposing to enter into?

---

[2] At this proceeding, the following defendants besides Riojas were rearraigned: Ricardo Riojas, Ramiro Riojas, Arcelia Riojas and David Cantu. All references herein are to Roberto Riojas.

The Defendant:  Yes, ma'am.

*                      *

The Court:  Okay.  I want to now go over the punishments that you are facing, the maximum punishment that each of you are facing as a result of your plea of guilty this morning.

Roberto Riojas, for count 90, which is the continuing criminal enterprise count, in violation of 21 United States Code, Section 848, the penalty is imprisonment for a minimum mandatory of 20 years and up to life, and/or a fine of up to $2 million. There would also be at least three years supervised release and $100 per count of conviction.

For count five, the money laundering conspiracy, in violation of 18 United States Code, section 1956, the penalty is imprisonment of up to 20 years and/or a fine of up to $500,000, at least three years supervised release, and $100 per count of conviction for a total of $200.

*                      *

On the money laundering count, count five, there is an alternate fine amount so that the fine is $500,000 or twice the amount of the proceeds of the money laundering activity.  Do you understand that?

The Defendant:  Yes, ma'am.  I ain't worried about that because 20 years is life for me, anyway.

The Court:  Well, I understand that, but I've got to tell you about all this stuff, anyway.

The Defendant:  Yes.

The Court:  I show – and from your comment, I assume that you know this, but I need to make sure on the record that I've told you that this minimum mandatory statute would overrule or override the sentencing guidelines, so no matter what the sentencing guidelines show your sentence should be,Congress has passed these minimum mandatory statutes, which means the court has to impose a sentence that is, in this particular case, at least 20 years?

Do you understand that?

The Defendant:  Yes, ma'am.

The Court:  All right.  Do you understand those are the maximum possible penalties that you're facing as a result of your plea of guilty this morning.

The Defendant:  Yes.

                    *                                        *

The Court:  Under the Sentencing Reform Act of 1984, the United States Sentencing Commission has issued guidelines for judges to follow to determine how the sentencing guidelines apply in your case.

Have each of you gone over with your attorneys how the sentencing guidelines may apply in your case?

Roberto Riojas?

The Defendant:  Yes, ma'am.

                    *                                        *

The Court:  Do each of you understand that I will not be able to determine what your guideline sentence is until after the probation officer has made an independent evaluation and investigation concerning your case?

Do you understand that, Roberto Riojas?

The Defendant:  Yes, ma'am.

                    *                                        *

The Court:   And after the probation officer has made that investigation and assessment, he or she will write a report in which certain recommendations are made, certain factual findings are made, and I will be given a copy of that report in order to aid me to determine what your sentence should be in this case.  And you and your attorneys will be given a copy of the report, the government will be given a copy of the report, and you and the government will be given an opportunity to object to any findings that are made in the report.  And after the objections have been made, we will have a sentencing hearing.  And at that sentencing hearing I will address any objections that have been made and rule on those objections.

I will also at that point consider any motions that the government may file, any motions that your lawyers may file, any recommendations that the government may make.  Some of the motions that the government may file or recommendations that the government may make may be a part of your plea agreement.

So, for example, if there is in your written plea agreement an agreement by the government that under certain circumstances and subject completely to their discretion, they may determine that you deserve a 5K1 motion, it would be possible that that could happen, if the government does make that determination and files a 5K1.1 motion for reduction, I am not bound by that motion. In other words, I will consider that motion just as I would consider any other motion. And just because that agreement is in your plea agreement, I am not bound to grant the government's motion if, in their sole determination, they should decide to file such a motion.

Do you understand that Roberto Riojas?

The Defendant: Yes, ma'am.

&ast;                                                    &ast;

The Court: And I want you also to understand that I don't have any idea what your sentence will be at this point; that I will have to not only consider what the probation officer's report says, I will also have to consider what the government says at the time of sentencing, when they make any motions that they may choose to make or any recommendations they may choose to make. I will also have to consider any objections any of you may make to the probation officer's presentence report. And there will be a variety of things that I will look at and consider before I determine what your sentence will be.

So I don't want you to think that I know what your sentence is this morning, because I have no idea what that report's going to say or how I'm going to rule on any motions or recommendations or objections that are made in your case at the time of sentencing.

Do you understand that, Roberto Riojas?

The Defendant: Yes, ma'am.

&ast;                                                    &ast;

The Court: All right. And in your discussions with your attorneys, you may well have reached an estimate of what you think you're going to get in the case based upon the plea agreement and also just your evaluation of the guidelines and of just the circumstances of your case. And it could be that your estimate, the estimate that you and your attorneys have arrived at, may be different and may be less than the sentence that I actually give you. In other words, I may reach a determination that your sentence should be more than the estimate that you have reached when you've discussed the case with your attorneys. And I want you to understand that if my sentence is more severe than the one you're expecting right now, as we're here today,

that you will not at that point be given an opportunity to withdraw your plea of guilty.

Do you understand that, Roberto Riojas?

The Defendant:  Yes, ma'am, I understand.

                     \*                                     \*

The Court:  The essential elements of the crime, the parts of the crime, the parts that the government would have to prove to the trier of fact beyond a reasonable doubt before that trier of fact could find you guilty of that crime, and the essential elements of this money laundering conspiracy, violation of 18 United States Code, Section 1956, are as follows:

And I believe all of you but David Cantu are wishing to enter a plea of guilty to that count.

First of all, that there was an agreement between two or more persons and that each of you was a person who was a part of that agreement.

Second,  that that agreement was to knowingly conduct a financial transaction, and that that financial transaction affected interstate commerce; and that that financial transaction involved the proceeds of a specified, unlawful activity – and in this case, that unlawful activity would be drug trafficking.

                     \*                                     \*

And that each of you had the intent to promote the carrying on of the specified unlawful activity knowing that the funds represented some form of unlawful activity.

                     \*                                     \*

Do you understand, Roberto Riojas, that those are the essential elements of count five of the indictment?

The Defendant:  Yes, ma'am.

                     \*                                     \*

The Court:  All right.  So I think in order to streamline this, I'm going to ask Roberto Riojas, Ricardo Riojas and Ramiro Riojas to listen to these essential elements because for each of you, you are each charged in a separate count with the continuing criminal enterprise, but the essential elements of the crime would be the same.

So for Roberto Riojas, it would be count 90.  For Ricardo Riojas, it would be count 89.  And for Ramiro Riojas, it would be count 91.  So these would be the essential elements of each of those counts.

And they're each in violation of 21 United States Code, Section 848.

The first element is that there is a violation of federal narcotics law that has a felony punishment.

Second, and that violation is a part of a continuing series of violations of the narcotics laws, and that it was undertaken by each of you in concert with five or more other persons.  And that each of you is an organizer, manager or supervisor, and that each of you obtained substantial income or resources from that series of violations of the narcotics laws.

*                                      *

Do you understand, Roberto Riojas, that those are the essential elements of count 90 of the indictment?

The Defendant:  Yes, ma'am. (Document No. 2713, pp. 13-14, 16-18, 22-28, 34-37)

Further, the Government outlined what the Government was prepared to prove had the case proceeded to trial:

Your Honor, through the use of court-authorized wire intercepts, confidential sources, undercover agents, surveillance, the execution of search warrants, the actual seizures of narcotics, and codefendant testimony, it would be shown that Roberto Riojas, Ricardo Riojas, and Ramiro Riojas at a time between sometime between '86 and '96 were part of an organization that transferred marijuana from Mexico to the Starr County Area, and then from Starr County up to Houston and other states besides Texas.

At points during this operation they each either directed, managed or supervised more than five individuals and received substantial resources or income from their activities in marijuana trafficking.

Roberto, Ricardo and Ramiro Riojas recruited individuals, such as Jose Santos Trevino, Robert Rosa, Herbert Ross Watkins, [Z]argosa Sandoval,  Federico Perez III, Pablo Gonzalez, Jr., and others, to transport shipments of marijuana from the Starr area to the Houston area.

All three of the individuals, Ricardo, Roberto, and Ramiro Riojas coordinated and directed the activities of these individuals in order to insure the successful transportation and distribution of the marijuana.

Ricardo, Roberto, Ramiro and others also personally oversaw the delivery of the marijuana to customers in Houston, Texas and elsewhere, and the subsequent collection of the currency generated by the sale of the marijuana.  They also utilized the services of other people to recover money, such as Alvaro Riojas, Renato Riojas, Roberto Riojas, Jr., Rene Gonzalez, and others.

The proceeds from this organization, by Roberto, Ramiro and Ricardo Riojas, were utilized to purchase property, their residences, ranches, with these proceeds.

In 1995, a cooperating source was contacted by David Cantu, who worked for Roberto Riojas, to drive a load of marijuana to Chicago for the Riojases.  The confidential source had numerous meetings and conversations with Mr. Cantu and/or the Riojases to coordinate and plan the transportation of the marijuana.

Approximately 707 pounds of marijuana was taken by the confidential source to Chicago.  It was obviously seized by police officers but it was reported back by the confidential source to the Riojases and Cantu that the police had seized the marijuana; it was missing.

As listed in the indictment, some of the property that is noticed to forfeiture, your Honor, as relates to, in this instance, Mr. Roberto Riojas, Sr., and Arcelia Riojas is property number 23.  There was a residence built on this.  This residence was built with drug proceeds.  It was also where meetings were held to plan and distribute the transportation of marijuana, where proceeds from the sale of marijuana were delivered, and where marijuana was stored prior to transortation and distribution to other places.

The phone that was at this residence was – pursuant to court-authorized intercept, messages concerning marijuana trafficking were intercepted and include interception of Arcelia Riojas relaying messages related to drug trafficking.

Property number fourteen is the property that was purchased by Roberto Riojas in 1984 and sold in 1989 for $4,000.  It was purchased with drug proceeds, your Honor.

Property number 28 was purchased by Roberto and Arcelia Riojas.  Its common name would be the Double R Feed and Seed.  Meetings were held here concerning the distribution and transportation of marijuana.  Proceeds of sale of marijuana were delivered here.  Drug proceeds delivered here.  Vehicles containing marijuana were stored here prior to transportation and distribution to others.

Property number 40, again, property by Roberto and Arcelia Riojas.  This property was purchased from Renato Riojas.  The money used to purchase the property came from drug trafficking.  And, again, this is a location where meetings were held to discuss the transportation and distribution of marijuana and where vehicles that were used in the transportation of marijuana were kept.

Property 34 D-1, 2 and 3, property purchased by Roberto and Arcelia Riojas, approximately 330 acres of land.  The currency used to purchase this property was from drug trafficking.  The property is commonly known as the Double R Ranch and Racing stables.  Proceeds from drug trafficking were used to construct buildings on the land, as well.  The location was also a place where meetings were held to discuss the marijuana trafficking business.

Property 26, again, purchased by Roberto and Acrelia Riojas.  This is four lots. The property was purchased with proceeds from drug trafficking.  It was purchased in '91 and sold in '96 for 60,000, $60,000 I believe.

Property 35 is, again Roberto and Arcelia Riojas purchased approximately 50 acres for $40,000, approximately.  Again, this purchased with drug proceeds. Property's titled in the names of Roberto and Arcelia's children, Roberto Riojas, Jr., and Maryann Riojas and Jorge Antonio Riojas.  (Document No. 2713, pp. 39-42).

As to Riojas' own version of his  role in the offenses, the following exchanges took place between

the Court and Riojas:

The Court:  All right.  Roberto Riojas, can you tell me in your own words what you did?

The Defendant:  Haul marijuana from Starr County to Houston.  That's what I did. But I'll tell you what.  Not all this is true.  I had a business of my own here in Houston.  I had a night club.  Most of the money I bought some land with that money, too.  I sold my club for a hundred thousand dollars.

The Court:  So you're saying that some of the ---

The Defendant:  Well, some of the property, I bought it with illegal money.

The Court:  Some of the property that Mr. Clark was reciting about?

The Defendant:  Yes, that's what I'm saying.  My house, I work in Houston as a machinist from '72 to '78.  And down payments of $15,000, my savings, on my house.  I did that.

The Court:  Well, okay.  With the exception of those pieces of property---

The Defendant:  Yes.

The Court:  —Is there anything incorrect about what Mr. Clark---

The Defendant:  No.

The Court:  Wait until I finish my question because she's got to take us both down. Okay?

The Defendant: Okay.

The Court:  With the exception of those particular pieces of property that you've mentioned, is there anything incorrect in Mr. Clark's recitation of what it is he believes he can prove?

The Defendant:  No, No, your Honor.

The Court: The rest of it—

The Defendant:  The rest of it– yes.

The Court:  — is correct?

The Defendant:  Is correct.

The Court:  It happened?

The Defendant:  Yes, it happened.  (Document No. 2713, pp 46-47).

Based on the above colloquy, Riojas' guilty plea was accepted by the Court:

The Court:  It is the finding of the Court in the case of the United States versus Roberto Riojas, Ricardo Riojas, Ramiro Riojas, Arcelia Riojas and David Cantu, that each defendant is fully competent and capable of entering an informed plea; that the defendants are aware of the nature of the charges and the consequences of the plea, and that the pleas of guilty are knowing and voluntary pleas, supported by an independent basis in fact containing each of the essential elements of each of the offenses.  The defendants are now adjudged guilty of those offenses.  (Document No. 2713, p. 53).

Prior to sentencing a Pre-sentence Investigation Report ("PSR") was prepared (Document

No. 4730 and Second Addendum, Document No. 4758), to which Riojas filed written objections

(Document No. 4692).[3]  Pursuant to the PSR, Riojas' guideline sentencing range was calculated as

_____

[3] Riojas objected to the relevant conduct section of the PSR, in particular, the quantity of marijuana he was held accountable for.  Riojas objected to ¶ 11-50, 56, 57, 63-72, 74, 81, 82, 98-99, 101-112, 115, 130, 131, 175, 186, 187, 188, 194.  According to Riojas, his base offense of 38 was too high as it was based upon an inaccurate amount of marijuana.  In addition, as to his base offense level, Riojas argued that the possession of firearms by Desi Guerra was not reasonably foreseeable by him, and as such, his base offense level should not be increased by two levels pursuant to U.S.S.G. § 2D1.1(b)(1).  Also, Riojas objected to not being given a three level adjustment for acceptance of responsibility. Riojas argued that his written statement of acceptance of responsibility along with his six debriefing sessions warranted the adjustment under U.S.S.G. § 3E1.1.

follows:  (1) Riojas' base offense was 44.  (2) With an adjusted base offense level of 44,[4] and with

---

[4]  Riojas submitted a written statement concerning his involvement in the drug trafficking/money laundering activities and participated in six debriefing sessions:

> Beginning around the middle part of the 1980's I, Robert Riojas, along with my brothers Ricardo, Ramiro, Renato and Alvaro started to sell and transport marijuana to Jimmy Jimenez and Felipe Munoz at Stafford, Texas near Houston.  The marijuana was brought from two individuals from Mexico whose names were Ramon Garcia and Alfredo Hernandez.  The marijuana was sometimes stored in a storage building located in Fronton, Texas and repackaged for delivery to Houston.
>
> After repackaging the marijuana, usually about 40 to 50 pounds at a time, would be picked up by drivers from Houston.  Jimmy Jimenez, his brother Sam, Felipe Munoz and Rudolfo Arias would drive from Houston to pick-up the marijuana which would be stored in the panels of three 1976 Oldsmobile cars.  All this we would do for about 3 or 4 months per year.
>
> This process of selling and transporting marijuana continued off and on with the involvement of various other individuals until 1993, when I stopped doing it.  I and my brothers throughout this time worked with various individuals named in the indictment.  I would estimate that during this period of time we moved approximately 1,000 pounds per year.
>
> About from 1986 to 1994 my brother Ricardo no longer worked with me.  About 1993 my other three brothers and I stopped working for about one year because Rodolfo Arias owed us some money and refused to pay us.  Sometime around 1994 I again started working again with Arias for only one shipment but stopped again because he refused to pay.  During this period of time we also worked with Desiderio Guerra, Roberto Castaneda, Federico Perez, Zargosa Sandoval and others from the Houston area.
>
> Around March 1994 when I again started working with Arias, my brothers and I had separated and were no longer working together.  During this period I took Arias two loads of marijuana, but as I mentioned before, he refused to pay me.
>
> Sometime during 1995 David Cantu introduced me to a guy by the name of Chendo, who last name I do not know.  Chendo was a truck driver whose job it was to haul marijuana.  I asked Chendo if he would take a load of marijuana for Juan Gomez, from Mexico.  Gomez, who I had recently met, asked me if I knew someone who could take a load to Chicago.  I told him that I would find someone in exchange for a cut of the money for myself and David Cantu.  This load, however, was confiscated by agents before it got to Chicago.
>
> During 1995 and 1996, my brother Ricardo and I got together again and I told him that I had a friend in Bishop, Texas, whose name is Arnoldo Flores, who would help

a criminal history of category I, Riojas had a guideline sentence of life imprisonment.

On Janaury 24, 2002, Riojas moved to withdraw his guilty plea.  (Document No. 4643).

Riojas argued that he should be allowed to withdraw his guilty plea because of the delay between

his rearraignment and sentence.  The Government responded to Riojas' Motion to Withdraw Guilty

Plea (Document No. 4765), and opposed Riojas' attempt to withdraw his guilty plea.

Riojas was sentenced on April 12, 2002.  (Document No. 4774, Transcript of Sentencing

Hearing, Document No. 4890).  The record shows that the Court considered Riojas' objections to

---

us sell marijuana.  We took him two loads of 300 pounds each.  Roberto Rosa took the load to Flores, but Flores never paid us.

The portion of money that we made from the sale of marijuana during the period of time mentioned by me above was used by me and my wife to purchase various items including some property we now have.  Our residence, however, was purchased with money I received from the sale of a nightclub I owned in Houston called the "Tropicana," which I sold for about $100,000 around the time I purchased my residence in Mission, Texas.

I accept full personal responsibility for my unlawful conduct which I have tried to recall and have attempted to briefly describe in this letter.  I am truly sorry for having engaged in this criminal conduct and ask for forgiveness.  I know what I did was wrong and that I must be punished for my conduct.  My only request is that the Court consider my entire background, my family and my health in determining my sentence. (Document No. 4730).

Notwithstanding Riojas' six debriefings and written statement, Riojas was not given a three level downward adjustment for acceptance of responsibility because:

Based upon the defendant's statement, as well as his objections to the PSR, he continues to minimize his role and deny relevant conduct.  We maintain the defendant has  not clearly demonstrated an affirmative acceptance of responsibility as contemplated by U.S.S.G § 3E1.1(a).  However, should the Court find the defendant has accepted responsibility, then he is eligible for a three level reduction, which would result in a total offense level of 41.  Based on a total offense level of 41 and a criminal history category of I, the guideline imprisonment range would be 324 to 405 months.  The fine range would be the same.  (Document No. 4692).

the PSR, and further inquired of Riojas whether he had additional objections that had not previosly

been made by counsel:

> The Court:  Mr. Riojas, have you had a chance to read over this presentence report that's been filed in your case?

> The Defendant:  Yes, ma'am.

> The Court:  All right.  and—

> The Defendant:  It took me several days.

> The Court:  Sorry?

> The Defendant:  It took me several days.

> The Court: I know what you mean.  I – it took me several days, too.  Do you feel like you understand everything in it?

> The Defendant: Yes.

> The Court:  Do you have any questions you want to ask about it now?

> The Defendant:  No.

> The Court:  All right.  Mr. Ruiz, your attorney, has filed some objections, and I'm going to go over those in just a minute, but I want to find out from you if you have any additional objections that Mr. Ruiz did not make on your behalf.

> The Defendant:  No, ma'am.

> *                                        *

> Mr. Ruiz:  Yes, your Honor.  I – other than the– my written arguments, I don't have anything to add.

> The Court:  All right.

> Mr. Ruiz:  Anything to add, except for acceptance of responsibility.  Your Honor, the probation department is recommending that he not be given a three-level reduction for his acceptance of responsibility, and I don't see the reasoning behind it.

> He pled very quickly.  It saves the government thousands of dollars and time.  He debriefed.  He was– I believe he was at a briefing meeting on six occasions.  He–

I was present in some of those– on some of those debriefing meetings.  He was truthful.  He completely debriefed, told them all about his involvement.  So, I don't see what else we should have done to gain responsibility–acceptance of responsibility reduction.  He did everything that he agreed to do.

The Court:  Ms. Lombardino, do you want to respond to that?

                              *                                        *

The Court:  While she's waiting, I'll just say that the probation officers found that Mr. Riojas has greatly minimized his and his brother's participation in the offense.  That's why the probation office did not give him acceptance of responsibility.

In other words, you can say you did something; but in order to get acceptance, you have to admit to what the relevant conduct is, basically.

Mr. Ruiz:  Well, we have, you Honor.  He has.  He's saying, I did these things, and, you know – and, you know, plus in the debriefing, he also says a lot of things that he did in conjunction with other people.

Ms. Lombardino:  Your Honor, if I may.

The Court:  Sure.

Ms. Lombardino:  From a factual perspective, the government has debriefed Mr. Riojas on several occasions; and our– and we look at this from an overall perspective; and, you know, we cannot concur that he was truthful in debriefings.  But I believe that under the law, it really is more what is before – what he tells the Court about accepting responsibility; and I don't think he really accepts it.  The government as well—

But I do have to – I do need to say that, I think out of – just out of fairness that – for Mr. Riojas, that he has – as required by his plea agreement, he has agreed to and has executed deeds to give up his residence.

I just wanted this Court to know that that part of his plea agreement, he has definitely, you know, complied with the government.  He's going to forfeit that and give all that to the – to the United States.

And I believe we also have another waiver that we're asking him to sign today, but – but I believe that the probation – the PSR itself pretty much says it all on this point.

The Court:  All right.

Probation Officer:   Your Honor, our primary problems with recommending acceptance of responsibility for Mr. Riojas has to do with the actual written statement that he submitted to the probation office.

One of the things that was particularly blatant as part of the denial of acceptance of responsibility was his statement that his organization only did a thousand pounds of marijuana a year, which would equate to approximately 8,000 pounds of marijuana.

Now, the Court might want to hear from Mr. Riojas. Maybe today he's in a different place and might be willing to accept responsibility for the facts that are laid out in the PSR; but based on the information that he provided us at the time, he was not accepting responsibility.

The Court: Yes. I'm looking at Paragraph 184, which was actually – I'm on page 66. There's actually a number of paragraphs. And in the third subparagraph, Mr. Riojas says, "This process of selling and transporting marijuana continued off and on with the involvement of various other individuals until 1993 when I stopped doing it.

"I and my brothers throughout this time worked with various individuals named in the indictment. I would estimate that during this period of time we moved approximately 1,000 pounds a year."

Mr. Ruiz: Yes. Your Honor, my client, Mr. Riojas, has just advised me that he meant for each of those persons.

The Court: That's a quote from the statement that I was– that probation was being– So, you're saying now that–that a thousand pounds—

The Defendant: On each client that I was– that I was— 10,000 pounds that I moved total with each client.

The Court: 10,000 pounds total with each client.

The Defendant: There was three clients. There was Arias, Armando, and Jimmy.

Mr. Lombardino: Your Honor, that's still not—

The Court: How much did we — I'm looking for where it was found. The quantity of marijuana that you— that the probation officer found was – you were responsible for was 69,387 kilograms.

The Defendant: Yes.

Probation Officer: Approximately 129,160 pounds.

The Defendant:  Okay.  Yes.  One person there, is saying itself if 50,000 – 50,000 pounds–52,000 pounds right then and there.  That is not true.

That guy never worked with me, and they're saying that my brother, Alvaro Riojas, hired him.  Alvaro Riojas had no authority to hire nobody in this organization.

Ms. Lombardino:  Well, you Honor, I mean, it's relevant conduct; and if you're trying relevant conduct, I believe the probation office can address the ball on that.  When you're dealing with this particular aspect of the sentencing guidelines, it's pretty black and white.

The Court: So, just tell me, Mr. Riojas, what is your– what are you saying your total responsibility would be in terms of kilograms of marijuana?  What are you saying?

The Defendant:  A good 60,000.  60,000 kilograms of marijuana.

The Court:  60,000 kilograms of marijuana?

The Defendant:  No.  I mean, 60,000 pounds of marijuana.

The Court:  60,000 pounds of marijuana.

The Defendant:  Yes.

The Court:  So, that's about half as much as what the probation–

The Defendant:  Yeah.  Like I'm saying, 52,000 pounds of that guy is not true.  7,000 pounds that somebody else is saying there, it's not true.  That's 60,000 right there that's not mine.

The Court:  Well, I believe that the – that the findings of the presentence report are based on credible and accurate information, and I'm going to have to go with the probation officer's findings in this, and I'm going to overrule the objections to the PSR made by the defense and – for the reasons stated in the probation officer's responses in the addendum, and I'm going to ask Ms. Lombardino if she has anything to add to what she – her written objections are?

Ms. Lombardino:  No, Your Honor.  (Document No. 4890, pp. 2-8)

In addition, Riojas was afforded the opportunity to address the Court prior to the pronouncement of

sentence by the Court:

The Defendant:  Only that's I'm sorry, your Honor, about all this.  I take full responsibility for it, and I'm really sorry.

*                                          *

Excuse me, your Honor, I was– who in this living world is going to say he pled guilty to life?  You know what I mean, pleading guilty to life?  I mean, in that case, we would take it to trial.  I mean, it was not explained this way to me.

The Court:  Oh, I think it was.  I think it was explained to you.  I mean, I explained it to you way back when.  So, I can't – I know I did.  So, I can't accept that. (Document No. 4890, p 9-10).

Thereafter, Judge Harmon sentenced Riojas to  life imprisonment.  Riojas was sentenced to life imprisonment as to count 90, and a term of 240 months' imprisonment as to count 5, the terms to be served concurrent.  In addition, concurrent term of five years of supervised release were imposed. Also, the Court imposed a fine of $50,000 and a special assessment of $200.  (Document No.4774, Document No. 4890, pp. 10-12).  Thereafter, Judge Harmon denied Riojas' Motion to Withdraw his guilty plea.  According to Judge Harmon there was no basis to grant the motion because

The Court:  All right.  Okay.  I have considered the motion, and I do not find any basis for it.  Therefore--

I mean, as I said to Mr. Riojas, I did inform him of the consequences of his plea, and I found him to be capable of entering an informed plea, and he did enter an informed plea; and, therefore, I deny the motion to withdraw the guilty plea.  (Document No. 4890, p. 13).

Upon the Government's motion, the remaining counts against Riojas were dismissed..  (Document No 4776, Document No. 4890, p.14).  Judgment was entered on July 23, 2002. (Document No. 4901).

Riojas appealed his sentence to Fifth Circuit Court of Appeals.  On May 20, 2003, the Fifth Circuit affirmed his conviction.  (Document Nos. 5154, 5155).  The Fifth Circuit wrote:

Roberto Riojas appeals his life-sentence based upon his guilty-plea conviction for engaging in a continuing criminal enterprise and conspiracy to launder monetary instruments.  Riojas contends the prosecutor knowingly failed to disclose that the presentence investigation report (PSR) contained inaccurate information and the district court erred in (1) calculating the amount of marijuana attributed to him for

sentencing purposes; and (2) denying him an adjustment for acceptance of responsibility. (Riojas originally claimed the court also erred by enhancing his sentence for obstruction of justice. Riojas concedes in his reply brief, however, that the district court did not so enhance his sentence.)

Because the appeal-waiver provision, here, was broad and appeal-waiver provisions are construed against the Government, it does not preclude a review of the above issues. *United States v. Somner*, 127 F.3d 405, 407-08 (5th Cir. 1997).

Riojas asserts the prosecutor knowingly failed to disclose the PSR inaccurate information, which was material to his sentence. The inaccurate information stems from purported discrepancies between the PSRs for Riojas and codefendant Armando Pena, Jr. Riojas, however, has not provided this court with a copy of Pena's as is his burden. *United States v. Coveney*, 995 F.2d 578, 587 (5th Cir. 1993). Nor is Pena's PSR part of the district court record. Because Pena's PSR is not properly before this court, Riojas's prosecutorial-misconduct claim fails. *See United States v. Flores*, 887 F.2d 543, 546 (5th Cir. 1989).

Riojas claims the district court erred in its drug-quantity calculation. Because a PSR is sufficiently reliable for making factual determinations and because Riojas offered no contradictory evidence, the district court did not clearly err by accepting the PSR's calculation of the amount of drugs attributable to him. *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999), *cert. denied*, 528 U.S. 1191 (2000).

Riojas contends the district court erred in refusing to reduce his offense level for acceptance of responsibility. Our review of a U.S.S.G. § 3E1.1 determination is "even more deferential than a pure clearly erroneous standard". *United States v. Chapa-Garza*, 62 F.3d 118, 122 (5th Cir. 1995). Riojas attempted to minimize his participation in the offense and downplay his criminal conduct. *See* U.S.S.G. § 3E1.1(a); *United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994). There was no error. (Document No. 5155).

On January 27, 2004, Riojas' petition for a writ of certiorari was denied by the United States Supreme Court. (Document No. 5253). On January 11, 2005, within one year of his conviction being final, Riojas timely filed § 2255 Motion to Vacate, Set Aside, or Correct Sentence (Document No. 5459). He subsequently filed a supporting memorandum. (Document No. 5480). In response, the Government has filed an Answer (Document No. 5521) and a Motion for Summary Judgment (Document No. 5520), to which Riojas has filed a Response (Document No. 5665).

## II.    Discussion

Riojas, through his § 2255 motion and Memorandum, raises numerous and repetitive claims relating to his life sentence.  Most of the claims are couched in terms of ineffective assistance of counsel.  Even those claims that are not directly related to his ineffective assistance of counsel claims (prosecutorial misconduct and court error) also relate to the length of his sentence.  To the extent Riojas raises herein a claim that the prosecutor knowingly failed to disclose that his PSR contained inaccurate information and that the district court erred in calculating his guideline sentence, namely, in calculating the amount of marijuana attributed to him for sentencing purposes and in denying him a three level downward adjustment for acceptance of responsibility, all of which are claims he raised in his direct appeal, no relief is available.  A claim that was raised and litigated on appeal cannot be relitigated in a subsequent § 2255 proceeding.  *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir.) ("It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 Motions."), *cert. denied*, 476 U.S. 1118 (1986); *see also Moore v. United* States, 598 F.2d 439, 441 (5th Cir. 1979) ("The appellate process does not permit reruns."); United *States v. Rocha*, 109 F.3d 225, 229 (5th Cir. 1997).  Moreover, to the extent Riojas challenges the validity of his guilty plea on grounds not asserted in his direct appeal, a review of the record shows that no relief is available on his claims.

According to Riojas, he received ineffective assistance of counsel regarding the decision to plead guilty.  Riojas claims that he pleaded guilty based on counsel's assurance that he would not be sentenced in excess of 20 years and would most likely receive a sentence of 13-15 years.  Also, Riojas claims that his counsel failed to discuss possible defenses, strategies or the strength of the Government's case with him. In addition, Riojas contends counsel should have known that the

Government never intended to comply with written plea agreement, and wanted Riojas to receive a life sentence because the Government suspected he was hiding properties and assets and was lying. According to Riojas, "[a]nd, but for counsel's slight of hand maneuvers in dangling the twenty years in front of him as opposed to life in prison, and counsel's knowing that no way on God's green earth with how Petitioner was charged as an organizer in an § 848 could he have received less than life; did not clarify before the court that he had promised [him] that in exchange for his guilty plea he would receive a sentence of no more than 20 years and no more than 15 for voluntarily forfeiting his properties to the government" (Document No. 5480, p. 11), and by agreeing to meet with agents of the U.S. Attorney's office and accept responsibility for his role in the CCE.   In addition, Riojas contends that counsel was ineffective as to the filing of his Motion to Withdraw Guilty Plea.  Riojas argues that counsel should have filed the motion well in advance of his sentencing hearing, and further alleges that counsel should have insisted that a ruling be made on Riojas' motion before Riojas was sentenced, not after he was sentenced.  Riojas further alleges that counsel failed to advise him that a guilty plea to the CCE count would result in a mandatory life sentence because the minimum and maximum sentence was the same for the CCE count, life imprisonment.  Riojas further argues that counsel was ineffective for failing to negotiate a fair and equitable plea in exchange for Riojas' guilty plea, failing to negotiate a binding plea with more concessions from the government and for failing to negotiate a plea to a lesser charge.  In addition,  Riojas  raises several ineffectiveness of counsel claims based on counsel's lack of understanding of the sentencing guidelines, and in particular, relevant conduct and sentencing enhancements.  In particular, Riojas alleges that his counsel failed to advise him about the sentencing impact of his role in the offense and drug quantity.  Riojas also claims that counsel should have argued that since the conspiracy began before the effective date of the sentencing guidelines, he should be sentenced as a pre-

guideline case. Also, Riojas claims that counsel should have protected his right to appeal. Finally, Riojas contends that his plea counsel should have moved to dismiss the Indictment based on the excessive sentencing delay.

In addition, Riojas alleges his attorney was ineffective because he failed to argue at his Rearraignment that not all of Riojas' properties were subject to forfeiture as some had been purchased from non-drug related proceeds. According to Riojas, he purchased his residence with savings from his employment as a machinist from 1972-1978 and from the sale of a nightclub he owned for $100,000 in 1982. In addition, Riojas argues that counsel failed to object to the PSR, and to the ex parte sentencing memorandum. As to Riojas' contention that counsel failed to object to the PSR, Riojas alleges that counsel failed to object to his base offense level and failed to object to the absence of a three level downward adjustment for acceptance of responsibility. In particular, Riojas contends counsel should have had him testify at the sentencing hearing about the inaccuracies in the PSR, such as ¶ 35 and 82 of the PSR. According to Riojas, he would have testified that he misstated the amount of drugs as 1,000 pounds per sale in his written statement, when he really meant 60,000 pounds, and had counsel corrected this inaccuracy, he would have qualified for the three level downward adjustment, and his sentence would have been 324 to 405 months, and not life imprisonment.

Also, Riojas alleges his counsel on appeal, Mr. Rozen, was ineffective because he failed to move to supplement the record with the PSR of his co-defendant Armando Pena. Riojas further alleges that appellate counsel was ineffective for not raising as issues on appeal, the government's filing of a secret sentencing memorandum, the denial of his motion to withdraw guilty plea, failing to raise a *Richardson* claim, and all viable issues such as the length of his detention and collusion between the Government, trial counsel and the Court.

Riojas also alleges that the Court erred in its admonishments at the guilty plea regarding the statutory minimum for the CCE offense, the elements of the CCE offense, the imposition of the fine and whether Riojas had the ability to pay a fine, and the right to a jury in the forfeiture proceeding. Also, Riojas challenges the Court's reliance on the confidential sentencing memorandum, and the failure of the Court to consider his Motion to Withdraw his Guilty Plea prior to imposing his sentence.  Lastly, Riojas alleges prosecutorial misconduct.

### A.      Procedural Bar

In his direct appeal, Riojas challenged the reliability of the PSR, the amount of marijuana he was held responsible for in setting his base offense level, and the denial of a downward adjustment for acceptance of responsibility.  Therefore, unless Riojas can show that some external impediment prevented him from raising his claims on direct appeal, *McCleskey v. Zant*, 499 U.S. 467, 497 (1991), and that there was prejudice severe enough to "infec[t] his entire trial with error of constitutional dimensions," *Frady*, 456 U.S. at 170, all other grounds for § 2255 relief are procedurally barred in this Court.

When claims of constitutional or jurisdictional import are not raised on direct appeal, the claims are procedurally defaulted, and can only be considered in a § 2255 proceeding if a movant can show cause for his failure to raise his claims on appeal and actual prejudice resulting from the alleged errors. *United States v. Placente,* 81 F.3d 555, 558 (5th Cir. 1996) ("[A] defendant who raises a constitutional or jurisdictional issue for the first time on collateral review must show both cause for his procedural default and actual prejudice due to any such errors."); *United States v. Gaudet,* 81 F.3d 585, 589 (5th Cir. 1996) ("When raising  issues of jurisdictional or constitutional magnitude for the first time on collateral review, a defendant ordinarily must show both cause for his procedural default and actual prejudice resulting from the error."); *United States v. Acklen,* 47

F.3d 739, 741-42 (5th Cir. 1995) ("Because a challenge under § 2255 'may not do service of an appeal,' a movant may not raise constitutional or jurisdictional issues for the first time on collateral review without establishing both 'cause' for his procedural default and 'actual prejudice' resulting from the error.") (internal citations omitted); *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) ("A defendant can challenge his conviction after it is presumed final only on issues of constitutional or jurisdictional magnitude ... and may not raise an issue for the first time on collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error."), *cert. denied*, 502 U.S. 1076 (1992).  Alternatively, procedurally defaulted claims can be considered for the first time in a § 2255 proceeding if the movant can show that he is actually innocent.  *Bousley v. United States,* 523 U.S. 614, 622 (1998) ("Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' or actual 'prejudice' ... or that he is 'actually innocent.'").  Actual innocence means "factual innocence, not mere legal insufficiency."  *Bousley,* 523 U.S. at 614, 118 S.Ct. at 1611.

Ineffective assistance of counsel can constitute cause for a procedural default under certain circumstances.  *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  "Not just any deficiency will do, however, the assistance must have been so ineffective as to violate the Federal constitution.  *Id*.  Riojas has not established cause and actual prejudice or that he is actually innocent, and his claims therefore are procedurally barred.  Moreover, even if the claims were not procedurally barred, no relief is available on the merits of the claims.

### A.  Ineffective Assistance of Counsel

Claims of ineffective assistance of counsel are generally measured by the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, a petitioner must be able to show

that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Strickland*, 466 U.S. at 687. Deficiency is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-88. The prejudice element requires a petitioner to prove that absent the disputed conduct of counsel, the outcome would have been both different and more favorable. *Id*. at 694-95. Under *Strickland*, a petitioner must establish both deficiency and prejudice prongs to be entitled to habeas relief. The failure to establish either deficient performance or prejudice makes it unnecessary to examine the other prong. *United States v. Seyfert,* 67 F.3d 544, 547 (5th Cir. 1995).

Under the deficiency prong of *Strickland*, judicial scrutiny of counsel's performance is "highly deferential" and "a strong presumption" is made that "trial counsel rendered adequate assistance and that the challenged conduct was the product of reasoned trial strategy." *Wilkerson v. Collins*, 950 F.2d 1054, 1064-65 (5th Cir. 1992), *cert. denied,* 509 U.S. 921 (1993) (citing *Strickland*). To overcome the presumption of competence, the petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Under the prejudice prong of *Strickland,* a petitioner must be able to establish that absent his counsel's deficient performance, the result of his trial could have been different. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

Constitutionally effective assistance of counsel under *Strickland* is not errorless counsel. The determination of whether counsel has rendered reasonably effective assistance turns on the totality of facts in the entire record. Each case is judged in light of the number, nature, and seriousness of the charges against a defendant, the strength of the case against him, and the strength and complexity of his possible defense. *Baldwin v. Maggio*, 704 F.2d 1325, 1329 (5th Cir. 1983), *cert. denied,* 467

U.S. 1220 (1984).   The reasonableness of the challenged conduct is determined by viewing the circumstances at the time of that conduct. *Strickland,* 466 U.S. at 690. "We will not find inadequate representation merely because, with the benefit of hindsight, we disagree with counsel's strategic choices." *Kitchens v. Johnson*, 190 F.3d 698, 701 (5th Cir. 1999) (quoting *Green v. Johnson*, 116 F.3d 1115, 1122 (5th Cir. 1997)).   The court's role "under § 2255 is not to audit decisions that are within the bounds of professional prudence." *United States v. Molina-Uribe*,  429 F.3d. 514, 518 (5th Cir. 2005), *cert. denied*, (2006).   In addition, conclusory allegations of ineffective assistance of counsel do not raise a constitutional question in a federal habeas petition. *Miller v. Johnson,* 200 F.3d 274, 281 (5th Cir. 2000), *cert. denied*, 531 U.S. 849 (2000) (citing *Barnard v. Collins,* 958 F.2d 634, 642 (5th Cir. 1992); *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

With respect to guilty pleas, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).   Thus, Riojas  "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

Claims of ineffective assistance of appellate counsel are generally assessed under the same two part *Strickland* deficiency and prejudice standard as claims of ineffective assistance of trial counsel. *United States v. Phillips*, 210 F.3d 345, 347 (5th Cir. 2000); *Roe v. Flores-Ortega*, 528 U.S. 470, 476-477 (2000) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *United States v.* Reinhart, 357 F.3d 521, 524 (5th Cir. 2004); *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999).   With respect to *Strickland's* deficiency prong, "[o]n appeal, effective assistance of counsel does not mean counsel who will raise every nonfrivolous ground of appeal available." *Green v. Johnson*, 160 F.3d 1029, 1043 (5th Cir. 1998), *cert. denied*, 525 U.S. 1174 (1999); *see also Ellis v. Lynaugh*, 873 F.2d 830, 840 (5th Cir.) ("The Constitution does not require appellate counsel

to raise every nonfrivolous ground that might be pressed on appeal."), *cert. denied*, 493 U.S. 970 (1989).  Rather, "a reasonable attorney has an obligation to research facts and law, or make an informed decision that certain avenues will not prove fruitful.  Solid meritorious arguments based on directly controlling precedent should be disclosed and brought to the court's attention." *Williamson*, 183 F.3d at 462-63.  Moreover, in a situation where there is no directly controlling precedent, "it is not necessarily providing ineffective assistance of counsel to fail to construct an argument that may or may not succeed.  But failure to raise a discrete, purely legal issue, where the precedent could not be more pellucid and applicable, denies adequate representation." *Id.* at 463 n. 7.  Simply put, "[a]ppellate counsel is obligated to only raise and brief those issues that are believed to have the best chance of success." *Rose v. Johnson,* 141 F.Supp. 2d 661, 704-705 (S.D.Tex. 2001). "It is not only reasonable but effective for counsel on appeal to winnow out weaker arguments and focus on a few key issues." *May v. Lynaugh,* 882 F.2d 134, 139 (5th Cir. 1989), *modified on other grounds*, 893 F.2d 683 (5th Cir. 1990), *cert. denied*, 502 U.S. 898 (1991).  "[O]nly when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Grey v. Greer*, 800 F.2d 644, 646 (7th Cir. 1985) (cited with approval in *Smith v. Robbins,* 528 U.S. 259, 288 (2000)).

As for *Strickland's* prejudice prong, in the context of an effective assistance of appellate counsel claim, the court must determine the probable outcome of the appeal had counsel's performance not been deficient. *Williamson,* 183 F.3d at 463.  "Prejudice results if the attorney's deficient performance would likely render either the defendant's trial fundamentally unfair or the conviction and sentence unreliable." *United States v. Dovalina*, 262 F.3d 472, 474 (5th Cir. 2001). When the claim of ineffective assistance of appellate counsel is based on counsel's failure to raise a claim or issue on appeal, prejudice is established if it is shown "that the appeal could have had,

with reasonable probability, a different outcome if the attorney adequately addressed the issue" and "that the attorney's deficient performance led to a fundamentally unfair and unreliable result." *Id.* at 474-475. "Judicial scrutiny of counsel's performance [is] highly deferential." *Strickland*, 466 U.S. at 690. Accordingly, there is a strong presumption that counsel's actions are reasonable. *Id*. at 689.

As to the specific examples of ineffective assistance of counsel which Riojas cites to in support of his ineffectiveness claims, the record either affirmatively shows that Riojas' counsel was not deficient or there is no evidence that the alleged errors prejudiced Riojas within the meaning of *Strickland*. Riojas cites the following specific examples to illustrate counsel's ineffectiveness: failure to formulate a viable strategy; failure to negotiate a fair and equitable plea; failure to obtain a binding plea agreement; failure to advise Riojas that the Government had no intention of a sentence of less than life; failure to advise that the minimum and mandatory sentence for the CCE count was the same, life imprisonment; failure to negotiate a plea to a lesser charge; failure to protect his right to appeal; failure to understand and to explain the sentencing guidelines, and in particular, relevant conduct; failure to argue that Riojas should be sentenced pre-guidelines; and failure to object to the PSR. As to appellate counsel, Riojas cites to the failure to argue, with respect to the CCE charge, that the three predicate offenses had not been articulated, and the failure to argue *Richardson v. United States*, 526 U.S. 813 (1999), failure to supplement the record with his co-defendant, Armando Pena's PSR, and the failure to raise all viable claims. The record either affirmatively shows that Riojas' counsel, at all stages, was not deficient or there is no evidence that the alleged errors prejudiced Riojas within the meaning of *Strickland*. Nowhere in the record is there evidence that Riojas was somehow prejudiced by his counsel's performance, at any stage of the proceedings.

Riojas claims that his guilty plea was not knowing because it was based on counsel's misrepresentations about a sentence of 13 to 15 years, and no more than 20 years. Riojas argues he

pleaded guilty based on counsel's assurance that he would receive a three level reduction for acceptance of responsibility and that he relied on his attorney's assurances regarding his sentence and has been prejudiced by a life sentence, which is substantially longer than he anticipated. According to Riojas, his attorney should have known that he would obtain no benefits by pleading guilty.

"Solemn declarations in open court carry a presumption of verity, forming a formidable barrier in any subsequent collateral proceeding." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (quoting *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)). However, a defendant such as Riojas may obtain habeas relief on the basis of misrepresentations as to what a sentence will be, notwithstanding statements made in open court, by showing the exact terms of the alleged promise, when, where and by whom the promise was made, and the precise identify of an eyewitness to the promise. *Cervantes*, 132 F.3d at 1110 (citing *Harmason v. Smith*, 888 F.2d 1527, 1529 (5th Cir. 1989)). Consequently, absent independent evidence that disputes Riojas' testimony which he gave during his Rearraignment, his ineffective assistance of counsel claims based on counsel's erroneous estimate of his sentencing exposure fails. Here, because Riojas has failed to come forward with credible, independent evidence, which would dispute his sworn statements at his Rearraignment hearing, his claims fail.

Moreover, regardless of whether Riojas' attorney knew of, or discussed with him, his relevant conduct and the application and effect of relevant conduct in calculating his sentence, and possible increases to his base offense level for firearms, and what was required for him to receive a three level adjustment for acceptance of responsibility, given Riojas' sworn statements at his Rearraignment hearing, which are entitled to the presumption of truthfulness, Riojas has not shown that he was unaware that he could be sentenced to more than twenty years' imprisonment. For example, at

Riojas' Rearraignment Hearing, he acknowledged, under oath, that the penalty for money laundering conspiracy (count 5) was a maximum of twenty years, and fine of up to $500,000 or twice the amount of the proceeds of the money laundering activity, and that as to the CCE count (count 90), he faced a minimum prison term of 20 years, and a maximum term of life imprisonment, and a fine of up to two million dollars. (Document No. 2713, p. 16). In addition, Riojas stated that no representations or promises had been made as to his sentence, that *only* the Court would determine his sentence he would receive after receiving and reviewing the PSR and objections made by Riojas to the PSR, and that he could not withdraw his plea if his sentence was more severe than he expected. (Document No. 2713, pp. 22-24, 27-28). Riojas repeatedly acknowledged that he understood that no one could tell him with specificity the length of the sentence that would be imposed by the Court and that his sentence would be determined by the Judge *only*. Similarly, the written Plea Agreement stated the minimum and maximum penalties for the offenses to which Riojas was pleading guilty, that his sentence would be imposed in accord with the Sentencing Guidelines, that the Court could impose *any sentence* within the statutory maximum, that the sentence to be imposed was within the discretion of the court, and that imposition of the maximum sentence would not be grounds to withdraw his plea. (Document No. 2643, ¶¶ 8-10). As such, even if Riojas' counsel had erroneously represented that he would receive a sentence of 13 to 15 years by entering into the plea agreement, Riojas, nonetheless, was aware when he entered the Plea Agreement and at the time of his Rearraignment hearing, that his sentencing exposure was a mandatory minimum sentence of 20 years or 240 months, and could be life imprisonment. As to Riojas' contention that the minimum and mandatory penalty for the CCE offense were the same, life imprisonment, the record belies his contention. The written plea agreement clearly states that the mandatory minimum for the offense was 20 years and the maximum penalty was life imprisonment. Contrary to Riojas'

contention, he was not charged as a principal administrator/organizer/leader of the CCE. Rather, he was charged based on his position as an organizer, supervisor or manager. (Document No. 19). Similarly, at his Rearraignment Hearing, the Court advised Riojas of the penalties. Riojas has not shown that his attorney misled him about the possible penalties he was facing. Likewise, the record refutes Riojas' contention that the Government never intended to comply with the plea agreement and was predisposed to a life sentence. Contrary to Riojas' allegations, neither the written Plea Agreement nor the transcript of the Rearraignment Hearing refer to a predetermined sentence of life imprisonment. While Riojas argues that counsel should have warned him about being candid during his six debriefings, and in his written statement of responsibility concerning drug quantity, he does not allege or suggest that counsel was aware that Riojas would be less than candid and downplay his involvement, at his debriefing and in his written statement, about his involvement in drug trafficking and money laundering activities, and that counsel was aware of this and should have known that Riojas had under- reported the amount of drugs in his written statement. Riojas has presented only conclusory statements, without any factual or legal basis, to support his allegation that counsel should have known that he was responsible for 60,000 pounds or roughly 50,000 pounds more than he admitted to in his written statement, and therefore would have known to correct his statement of responsibility so the Riojas would be eligible for a three level adjustment for acceptance of responsibility. Even assuming that counsel had known or should have known, Riojas has not shown that the change in drug quantity in his written statement for acceptance of responsibility would have resulted in the three level adjustment. The record shows that counsel re-urged his objection concerning acceptance of responsibility at Riojas' sentencing, and Riojas testified about this. Moreover, counsel filed written objections to the drug quantities and in particular to ¶ 35 and 82. The Court, however, overruled the objections.

To the extent that Riojas suggests he gained no benefits from the plea agreement, the record shows the Government agreed to dismiss the remaining counts against Riojas and agreed not to oppose a three level reduction for acceptance of responsibility, if recommended by Probation, and most important, it provided for the potential of a 5K1.1 motion for downward departure based on substantial assistance, all in exchange for Riojas' guilty plea, and forfeiture of assets.   Contrary to Riojas' allegation, the plea agreement provided the potential for a less harsh sentence.   Given the exchange between Riojas and the Court at his April 17, 1998, Rearraignment Hearing, which leaves no doubt that Riojas knew he faced up to a life sentence, and the explanation of the sentencing process, and in particular, that his sentence would not be known until the sentencing hearing, Riojas has not shown that simply because his counsel anticipated a substantially shorter sentence he was prejudiced within the meaning of *Strickland*. Riojas has failed to demonstrate that his guilty plea was not knowing, voluntary, and intelligent, and has likewise failed to overcome the presumption under *Strickland* that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689.  (quotations omitted). Even if counsel had predicted a much lesser sentence, Riojas' reliance on that sentencing estimate would have been unreasonable given the numerous warnings he received at his Rearraignment that the maximum sentence for the CCE offense to which he was pleading guilty was life.  By pleading guilty, Riojas  had the potential for a less harsh sentence given that the Government dismissed the remaining counts, the potential for a three level reduction for acceptance of responsibility, and the potential for a downward departure under 5K1.1.  In contrast, had Riojas gone to trial, it is highly likely that the jury would have found him guilty, based on the evidence, and there would have been no chance of a reduction based on his cooperation.  As such, counsel's initial estimate of 13 to 15

years was reasonable, given that various factors could have affected the final sentence. "A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence." *Daniel v. Cockrell,* 283 F.3d 697, 703 (5th Cir. 2002). "In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands." *Id.* (citing *Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993) (Defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel.") "Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on a defense counsel's inaccurate *prediction* that a lesser sentence would be imposed." *Daniel*, 283 F.3d at 703-04 (emphasis in original) (citations omitted). Given the potential sentencing benefits Riojas gained by pleading guilty to two counts, Riojas has not shown that counsel's performance fell below that of *Strickland* in negotiating a fair and equitable plea.

Moreover, to the extent that Riojas argues that counsel should have negotiated a plea to a lesser charge, upon this record, there is no indication that the Government would have been willing to enter such an agreement, especially since several of Riojas' co-defendants pleaded to similar counts, not lesser counts.

As to Riojas' contention that counsel should have obtained a binding plea agreement, the record shows that even had the Government agreed to a particular sentencing recommendation, such recommendation would not be binding on the Court. Indeed, Riojas was repeatedly advised by Judge Harmon that any recommendation by the Government concerning a sentence was a recommendation and that any sentencing determination would be made by the Court, not the Government.

As for Riojas' claim that he was prejudiced by counsel's failure to object to the PSR, the record shows that sentencing counsel filed written objections to the PSR. Counsel objected to drug quantity caluclations, argued that the sentencing guidelines in effect in 1986 should be applied as that is when the conspiracy began, objected to the base offense level, and objected to the absence of an adjustment for acceptance of responsibility. Moreover, contrary to Riojas' representations, counsel objected to drug quantity, set forth in ¶ 35 concerning Mario Gonzalez and ¶ 82 concerning David Torres as follows:

> 4. Defendant objects to paragraph 35 of the PSI in that Mario Gonzalez was never recruited by the Riojas brothers and never delivered, distributed or conspired to deliver or distribute 52,000 pounds on behalf of the Riojas brothers to anyone in Houston including Armando Pena, Desi Guerra or Margil Maldonado. Gonzalez exaggerated this amount in order to reduce his sentence for possession and delivery of cocaine charge unrelated to this defendant and this conspiracy.

>      \*                    \*

> 11. Defendant objects to paragraph 82 of the PSI in that the shipment in question was neither his nor his brothers. Furthermore except for one occasion they never worked with 18 wheelers. The allegation contained in this paragraph is not linked to this defendant or his brothers. David Torres statement that he assisted in unloading 7,000 lbs of marijuana which this defendant had supplied is not true. (Document No. 4692).

Because there was no resulting prejudice within the meaning of *Strickland*, no relief is available on this ineffectiveness claim.

As to Riojas' allegations that he received ineffective assistance of counsel because Mr. Reyna did not argue that Riojas' case should be considered a pre-guidelines case inasmuch as the conspiracy to which he pleaded guilty originated in 1986, one year before the guidelines were enacted, the Fifth Circuit rejected the identical arguments in *United States v. White*, 869 F.2d 822 (5thCir. 1989). Counsel is not "deficient for failing to press a frivolous point." *Sones v. Hargett*,

61 F.3d 410, 415 n.5 (5th Cir. 1995).  Likewise, counsel is not required to make futile motions or objections desired by his client.  *See Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990), *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995).  As such, this claim fails.

As to Riojas' claim that his counsel was ineffective because he failed to argue a violation of the Speedy Trial Act based on the four year delay between his plea and sentencing, during which time the probation office was able to build a stronger case against defendant, even assuming that counsel could have and should have made such an argument, Riojas has not shown he was prejudiced within the meaning of *Strickland*.  "The constitutionally guaranteed right to a speedy trial applies to sentencing.  We review sentencing delays under *Barker v. Wingo*, [407 U.S. 514 (1972)] for length of delay, prejudice, whether the defendant asserted his right, and the reason for delay." *United States v. Abou-Kassem*, 78 F.3d 16, 1671 (5th Cir. 1996).  Here, the gist of Riojas' speedy trial argument relates to the calculation of his sentence in the PSR.  Riojas and seventy-eight others were indicted in a complex case, which spanned a ten year investigation.  The sixth superceding indictment charged various defendants with narcotics distribution, money laundering, conspiracy to evade currency reporting requirements, failure to file tax forms, aiding and abetting the use of a communication facility, aiding and abetting travel in foreign and interstate commerce, conspiracy to travel in aid of a racketeering enterprise, conspiracy to obstruct justice, obstruction of justice, and continuing criminal enterprise.  Because of the complexity of the case, there was a delay between Riojas' rearraignment and sentencing.  However, even assuming that Riojas had been sentenced sooner, his guideline sentencing range would have been calculated in the same manner.  As such, Riojas has not shown he was prejudiced within the meaning of *Strickland* by counsel's failure to object to the sentencing delay, and this ineffectiveness claim fails. *See Sones v. Hargett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) (Counsel is not deficient for failing to argue a meritless point); *United States*

*v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) ("An attorney's failure to raise a meritless argument cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Riojas further alleges that counsel was ineffective because he failed to argue at his Rearraignment and on appeal that his guilty plea was invalid on the basis that it was contrary to the holding of *Richardson v. United States*, 526 U.S. 813 (1999), in which the Supreme Court held that the jury must be instructed that it has to reach a unanimous verdict on each of the specific violations that make up the continuing series of violations, and he further alleges this claim should have been raised on appeal.   Riojas reliance on *Richardson* is misplaced because he pleaded guilty and therefore he was not entitled to a *Richardson* jury instruction.  In addition, to the extent Riojas suggests that there was no showing that he had participated in a "continuing series of violations" of the drug statutes, 21 U.S.C. § 848(c), count 90 identified the continuing series of violations as the crimes set forth in counts 1, 3, 4, 7, 10, 17, 24-26, 29-31, 35, 85-86, 109-118, 135 & 143, which were incorporated into count 90 by reference.  Also, Judge Harmon advised Riojas of the elements of the CCE count at his rearraignment, and Riojas testified that he understood the elements of the offense to which he was pleading guilty. Because Riojas was fully advised of the elements of the CCE offense, there was no legal or factual basis to raise a *Richardson* claim in his motion or on appeal.

Riojas next alleges that appellate counsel was ineffective for failing to argue that there was "collusion" between plea counsel and the government concerning his sentence.  Riojas has presented only conclusory statements, without any factual or legal basis, to support his allegation.  As such, appeals counsel was not ineffective for failing to raise this claim on appeal.  "Appellate counsel is not deficient for not raising every non-frivolous issue on appeal." *Reinhart*, 357 F.3d at 524.  As to

Riojas' allegation that appeals counsel was ineffective because he failed to supplement the record with the PSR of his co-defendant, Armando Pena, the record shows that a PSR was prepared for each defendant and focused on that particular defendant's relevant conduct based on information gathered through undercover operations, seizures of narcotics and currency, and twelve court authorized wire intercepts. Riojas has not shown he was prejudiced by the failure of counsel to submit the PSR of a co-defendant given that the Fifth Circuit Court of Appeals affirmed the court's application of the guidelines, and in particular, the drug quantity calculation and concluded that Riojas' PSR was reliable. As to Riojas' contention that counsel should have raised as an appeal issue the Court's reliance on a secret sentencing memorandum prepared by the Government, the record shows that the sentencing memorandum was prepared by the probation office, not the Government, and the sentencing memorandum was a summary of the PSR, including objections to the PSR. As to Riojas' contention that counsel should have argued on appeal the *Richardson* violation, as discussed above, there was no violation of *Richardson*.

Finally, Riojas alleges that based on the cumulative errors of counsel, he was denied effective assistance of counsel. Relief is available for cumulative errors that are of a constitutional dimension. *See, e.g, Coble v. Dretke*, 444 F.3d 345 (5th Cir. 2006) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997). Because Riojas has failed to show that counsel's performance was deficient in any respect, he is not entitled to relief on this claim.

### B. Court Error Claims

Riojas alleges that the Court erred in its admonishments at his Rearraignment by improperly advising him that the CCE count carried a statutory minimum of twenty years, when in fact, Riojas argues it was life, and further argues, that given Riojas' age, a sentence of 20 years was the equivalent of life; by failing to advise him that it intended to impose a fine or could impose a fine

and by failing to ascertain whether Riojas had the ability to pay a fine, and by failing to advise him that he was entitled to have a jury determine whether his properties are forfeitable to the government prior to accepting his guilty plea. Also, Riojas alleges that the confidential sentencing memorandum biased the Court against him and influenced the Court's decision regarding his Motion to Withdraw his Guilty Plea. Although Riojas did not raise these claims in his direct appeal, and as such, the claims are procedurally barred, Riojas would not be entitled to relief on his claims in any event because the record shows that at his Rearraignment on April 17, 1998, the Court engaged in an extended colloquy, which included a summary of the possible penalties, and that Riojas had agreed to the forfeiture of assets derived from his drug trafficking activities.

As to the confidential sentencing memorandum, the PSR was provided by the Probation Office to both the Government and Riojas, and both were given an opportunity to file objections. At his sentencing, Judge Harmon questioned Riojas about whether he had reviewed the PSR and had any objections, in addition to those raised by counsel. None of the information relied upon by the Court in sentencing was kept from the parties.

Finally, Riojas alleges that the Court did not articulate acceptance of his guilty plea. Again, the record refutes this allegation. At the conclusion of the Rearraignment hearing, Riojas' plea was accepted by the Court. (Document No. 2713, p. 53). Similarly, Riojas alleges the Court did not articulate specific reasons for his sentence. Again, the record refutes Riojas' assertion. The Court adopted the PSR as its own and the PSR set forth the calculation of Riojas' sentence. Next, Riojas alleges the Court erred in ruling on his Motion to Withdraw Guilty Plea after he had been sentenced. The record shows that Judge Harmon considered Riojas' motion but found no basis to grant the motion given that Riojas had been admonished at his Rearraignment that unhappiness with the length of his sentence was not a basis to withdraw his guilty plea:

The Court: All right. Okay. I have considered the motion, and I do not find any basis for it. Therefore--

I mean, as I said to Mr. Riojas, I did inform him of the consequences of his plea, and I found him to be capable of entering an informed plea, and he did enter an informed plea; and, therefore, I deny the motion to withdraw the guilty plea. (Document No. 4890, p. 13).

Lastly, Riojas' alleges that the Court erred in calculating his base offense level. Even if this claim was not procedurally barred and Riojas had, on direct appeal, argued that the Court erred by calculating his base offense at level 44, such a claim, which is based on the District Court's application of the United States Sentencing Guidelines, is not cognizable under § 2255. *United States v. Faubion,* 19 F.3d 226, 232 (5th Cir. 1994) (holding defendant's claim that district court erred in making upward departure under Sentencing Guidelines could not be considered in § 2255 proceeding.); *United States v. Payne*, 99 F.3d 1273, 1281-82 (5th Cir. 1996) ("A district court's technical application of the Guidelines does not rise to a constitutional issue."); *United States v. Walker*, 68 F.3d 931, 934 (5th Cir. 1995) ("A district court's calculation under or application of the sentencing guidelines standing alone is not the type of error cognizable under section 2255."), *cert. denied*, 516 U.S. 1165 (1996); *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)("Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice. Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding...A district court's technical application of the [Sentencing] Guidelines does not give rise to a constitutional issue.")(citations omitted).

Finally, even if the sentencing error claims were not procedurally barred, and even if such claims were cognizable in this § 2255 proceeding, no relief would be available on the merits of the

claims.  The record shows the Court adopted the facts as set forth in the PSR, and concluded that

Riojas' base offense level was 44 based on the quantity of marijuana and firearms used in connection

with the drug trafficking organization.  Facts contained in the PSR are considered reliable and may

be adopted without further review, if they have an adequate evidentiary basis and the defendant, such

as Riojas, fails to present rebuttal evidence.  *United States v. Taylor*, 277 F.3d 721, 723 (5th Cir.

2001); *United States v. Huerta*, 182 F.3d 361, 364 (5th Cir. 1999).

### C.  Prosecutorial Misconduct Claims

Riojas alleges the Government never intended to honor the plea agreement, that it submitted

"ex parte confidential sentencing memorandum" to the court, and colluded with defense counsel to

deprive him of his rights.  The gist of Riojas' arguments relate to his not being given a three level

adjustment for acceptance of responsibility.  Riojas contends that the Government knew he would

not get the sentence benefit, and further contends that his counsel was aware of this.   As discussed

above, the record does not support Riojas' allegations.  The record shows that Riojas was aware, at

the time he entered his guilty plea, that there was no absolute guarantee of a particular sentence or

that he would automatically get the three level downward adjustment for acceptance of

responsibility. Rather, the record shows that such a recommendation would be made by probation,

and the Government agreed not to oppose the recommendation.  Here, no such recommendation was

made in the PSR.  Moreover, Riojas was aware that even such a recommendation had been made,

his sentence would be determined by Judge Harmon and she was not bound by any

recommendations.  Riojas has not shown that the Government, alone or with counsel, attempted to

violate his constitutional rights.

As to Riojas' claim that the Government prepared the confidential sentencing memorandum,

the docket sheet reveals that the memorandum was prepared by Probation Officer who drafted the

PSR, and that the confidential sentencing memorandum was provided only to the Court, and not to the Government or Riojas.

Finally, with respect to Riojas' allegations that the Government, Court and counsel "tacitly or impliedly colluded to keep him detained in the county jail," as discussed above, this was a complex, criminal action and any delays between Riojas' Rearraignment and sentencing, were due to the complexity of the case.

In sum, Riojas' claims of trial error and prosecutorial misconduct are procedurally barred because they were not raised on direct appeal. Additionally, the claims are meritless.

Riojas argues that the District Court's sentencing determination is contrary to the Supreme Court's decisions in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker,* 543 U.S. 220 (2005) because the court, and not a jury, enhanced his sentence.  In *Blakely*, the Supreme Court invalidated the State of Washington's sentencing scheme, whereby a judge could possibly sentence a defendant to a punishment beyond a statutory range on the basis of judicially determined facts.  *Id.* at 2538.  In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Id*. at 490. The Supreme Court in *Blakely* expressly declined to state whether its decision applied to the Federal Sentencing Guidelines.  *Blakely*, 542 U.S. 296.

The Supreme Court, in its intervening decision, *United States v. Booker,* 543 U.S. 220, extended its holding in *Blakely* to the Federal Sentencing Guidelines, and concluded that there was: "no distinction of constitutional significance between the Federal Sentencing Guidelines" and the state sentencing scheme at issue in *Blakely. Id*. In keeping with its earlier decision in *Apprendi*, the

court also stated: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proven to a jury beyond a reasonable doubt." *Id.* To remedy the guidelines' Sixth Amendment problem, the Supreme Court severed and excised 18 U.S.C. § 3553(b)(1), which required mandatory application of the guidelines. *Id.* at 756-57, 765. As a consequence, the guidelines are now advisory in all cases. *Id.* at 757.

Because *Blakely* and *Booker* were decided after Riojas' conviction in the instant case became final, it must be determined as an initial matter whether *Blakely/Booker* should be retrospectively applied. The Supreme Court has not stated whether the rule announced in *Blakely* and *Booker* applies retroactively to cases on collateral review.[5]   However, the Fifth Circuit addressed this issue as to initial § 2255 motions, and has concluded that *Booker* does not apply retroactively to an initial § 2255 motion. *United States v. Gentry,* 432 F.3d 600 (5th Cir. 2005). Because *Booker* does not apply retroactively in initial § 2255 proceedings, Riojas is not entitled to relief in this proceeding on his *Blakely/Booker* claims.

## V. Conclusion and Recommendation

Based on the foregoing, and the conclusion that no relief is available to Riojas, it is

RECOMMENDED that Movant Roberto Riojas' § 2255 Motion to Vacate, Set Aside or Correct Sentence (Document No. 5459) be DENIED, that Government's Motion for Summary Judgment (Document No. 5520) be GRANTED and that this § 2255 proceeding be DISMISSED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record.   Within 10 days after being served with a copy, any party may file written

---

[5] The United States Supreme Court has granted *certiorari* in *Burton v. Waddington*, 142 Fed. Appx. 297 (9th Cir. 2005), *cert. granted*, 126 S. Ct. 2352 (June 5, 2006) and will address the issue of *Blakely* retroactivity.

objections pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b), and General Order 80-5, S.D. Texas.  Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc).  Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal.  *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996).  The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208.

Signed at Houston, Texas, this 4th day of January , 2007.

Frances H. Stacy
United States Magistrate Judge